# In the United States Court of Federal Claims

No. 19-161C

(E-Filed: December 2, 2020)

| | |
|---|---|
| BRIAN RICHMOND, et al., Plaintiffs, v. THE UNITED STATES, Defendant. | Motion to Dismiss; RCFC 12(b)(6); Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-19; Anti-Deficiency Act (ADA), 31 U.S.C. §§ 1341-42; Government Employees Fair Treatment Act of 2019 (GEFTA); Pub. L. No. 116-1, 133 Stat. 3 (2019). |

Jack K. Whitehead, Jr., Baton Rouge, LA, for plaintiff.

Erin K. Murdock-Park, Trial Attorney, with whom were Joseph H. Hunt, Assistant Attorney General, Robert E. Kirschman, Jr., Director, Reginald T. Blades, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. Ann C. Motto, of counsel.

OPINION AND ORDER

CAMPBELL-SMITH, Judge.

Plaintiffs in this putative collective action allege that the government, through several agencies, violated the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-19, by failing to timely pay their earned overtime and regular wages during the partial government shutdown and lapse of appropriations that began on December 22, 2018. See ECF No. 1 at 2-3 (complaint). On May 3, 2019, defendant moved to dismiss the complaint for failure to state a claim on which relief can be granted, pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC), on the basis that the Anti-Deficiency Act (ADA), 31 U.S.C. §§ 1341-42, prohibited the government from paying employees. See ECF No. 23.

In analyzing defendant's motion, the court has considered: (1) plaintiffs' complaint, ECF No. 1; (2) defendant's motion to dismiss, ECF No. 23; (3) plaintiffs' response to defendant's motion, ECF No. 26; (4) defendant's reply in support of its

motion, ECF No. 30; (5) defendant's first supplemental brief in support of its motion, ECF No. 32; (6) plaintiffs' response to defendant's first supplemental brief, ECF No. 35; (7) defendant's second supplemental brief in support of its motion, ECF No. 43; (8) plaintiffs' response to defendant's second supplemental brief, ECF No. 47; (9) defendant's third supplemental brief in support of its motion, ECF No. 51; and (10) plaintiffs' response to defendant's third supplemental brief, ECF No. 53. The motion is now fully briefed and ripe for ruling.[1] The court has considered all of the arguments presented by the parties, and addresses the issues that are pertinent to the court's ruling in this opinion. For the following reasons, defendant's motion is **DENIED**.

I. Background

Beginning on December 22, 2018, the federal government partially shut down due to a lack of appropriations. See ECF No. 1 at 2-3. The named plaintiffs in this case were, at the time of the shutdown, employees of the Bureau of Prisons, within the United States Department of Justice. See id.

In their complaint, plaintiffs allege that they are "'[e]xcepted' employees," performing "emergency work involving the safety of human life or the protection of property," and as such "were forced to continue to perform their duties designated as essential, without the receipt of their normally scheduled wages," during the shutdown. Id. at 3 & n.1. Plaintiffs also allege that, in addition to being excepted employees required to work during a shutdown, they were also "classified as FLSA non-exempt." Id. at 4-5. Despite being required to work during the shutdown, plaintiffs allege that they were not paid "in accordance with the minimum wage and overtime provisions of the [FLSA]." Id. at 3.

---

[1] Defendant moves for dismissal of plaintiffs' complaint for only one reason—"for failure to state a claim upon which relief may be granted." ECF No. 23 at 6. In one of its supplemental briefs, defendant suggests that a recent decision issued by the Supreme Court of the United States, Maine Community Health Options v. United States, 140 S. Ct. 1308 (2020), a case that does not involve FLSA claims, indicates that this court lacks jurisdiction to hear this case because the FLSA "contains its own provision for judicial review." ECF No. 51 at 2. In the same brief, defendant acknowledges binding precedent from the United States Court of Appeals for the Federal Circuit to the contrary. See id. (citing Abbey v. United States, 745 F.3d 1363 (Fed. Cir. 2014)). The court will not review this entirely new basis for dismissal, which was made for the first time in defendant's third supplemental brief, and which defendant acknowledges contradicts binding precedent. If defendant believes this court lacks jurisdiction to continue exercising its authority in this case, it may file a motion properly raising the issue. See Rule 12(h)(3) of the Rules of the United States Court of Federal Claims (RCFC) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

According to plaintiffs, defendant "cannot show it acted in good faith during its violation of the FLSA and therefore, in addition to monetary damages, the [p]laintiffs are . . . entitled to liquidated damages." Id. at 9. In support of this allegation, plaintiffs cite this court's decision in Martin v. United States, 130 Fed. Cl. 578 (2017), a case in which the court "found that the federal government's failure to timely pay similarly-situated plaintiffs violates the FLSA and that the government is liable for liquidated damages for committing such violations." Id. at 8. Plaintiffs now seek the payment of "all regular, minimum, and overtime wages," earned by plaintiffs, "liquidated damages equal to" any overtime or minimum wages earned, as well as attorneys' fees and costs. Id. at 11.

## II. Legal Standards

When considering a motion to dismiss brought under RCFC 12(b)(6), the court "must presume that the facts are as alleged in the complaint, and make all reasonable inferences in favor of the plaintiff." Cary v. United States, 552 F.3d 1373, 1376 (Fed. Cir. 2009) (citing Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991)). It is well-settled that a complaint should be dismissed under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy." Lindsay v. United States, 295 F.3d 1252, 1257 (Fed. Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

## III. Analysis

### A. Relevant Statutes

This case fundamentally concerns the intersection of two statutes, the ADA and the FLSA. The ADA states that "an officer or employee" of the federal government "may not . . . make or authorize an expenditure or obligation exceeding an amount available in an appropriation or fund for the expenditure or obligation." 31 U.S.C. § 1341(a)(1)(A). In addition, the ADA dictates that "[a]n officer or employee of the United States Government or of the District of Columbia government may not accept voluntary services for either government or employ personal services exceeding that authorized by law except for emergencies involving the safety of human life or the protection of property." 31 U.S.C. § 1342. In 2019, Congress amended the ADA, adding, in relevant part, the following:

> [E]ach excepted employee who is required to perform work during a covered lapse in appropriations[2] shall be paid for such work, at the employee's standard rate of pay, at the earliest date possible after the lapse in appropriations ends, regardless of scheduled pay dates, and subject to the enactment of appropriations Acts ending the lapse.

31 U.S.C. § 1341(c)(2) (footnote added). The amendment is commonly referred to as the Government Employees Fair Treatment Act of 2019 (GEFTA), Pub. L. No. 116-1, 133 Stat. 3 (2019). The knowing or willful violation of the ADA is punishable by a fine of "not more than $5,000" or imprisonment "for not more than 2 years, or both." 31 U.S.C. § 1350. And federal employees who violate the ADA "shall be subject to appropriate administrative discipline including, when circumstances warrant, suspension from duty without pay or removal from office." 31 U.S.C. § 1349(a).

Defendant separately has obligations to its employees pursuant to the FLSA, which governs minimum wage and overtime wage compensation for certain employees.[3] See 29 U.S.C. § 213 (identifying categories of exempt employees). The FLSA requires that the government "pay to each of [its] employees" a minimum wage. 29 U.S.C. § 206(a). Pursuant to the FLSA, the government also must compensate employees for hours worked in excess of a forty-hour workweek "at a rate not less than one and one-half times the regular rate at which [they are] employed." 29 U.S.C. § 207(a)(1). Although the text of the statute does not specify the date on which wages must be paid, courts have held that employers are required to pay these wages on the employee's next regularly scheduled payday. See Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 (1945); Biggs v. Wilson, 1 F.3d 1537, 1540 (9th Cir. 1993). If an employer violates the FLSA's pay provisions, the employer is "liable to the . . . employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be." 29 U.S.C. § 216(b). The employer may also be liable "in an additional equal amount as liquidated damages," id., unless "the employer shows to the satisfaction of the court that the act or omission . . . was in good faith, and that [the employer] had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]," 29 U.S.C. § 260.

---

[2] The statute defines "covered lapse in appropriations" to mean "any lapse in appropriations that begins on or after December 22, 2018." 31 U.S.C. § 1341(c)(1)(A).

[3] The FLSA initially applied only to the private sector when enacted in 1938, but was amended to cover public employees in 1974. See Fair Labor Standards Amendments of 1974, Pub. L. No. 93-259, 88 Stat. 55 (1974).

B. The Court's Reasoning in Martin Applies

In its motion to dismiss, defendant first argues that plaintiffs' complaint should be dismissed for failure to state a claim because the agencies for which appropriations lapsed on December 22, 2018, were prohibited by the ADA from paying their employees—even excepted employees who were required to work. See ECF No. 23 at 12-14. This mandate, in defendant's view, means that defendant cannot be held liable for violating its obligations under the FLSA. See id. Defendant argues:

> When Congress criminalized payments during an appropriations lapse, it plainly precluded payments on the schedule plaintiffs assert is required by the FLSA. Federal officials who comply with that criminal prohibition do not violate the FLSA, and Congress did not create a scheme under which compliance with the [ADA] would result in additional compensation as damages to federal employees.

Id. at 13.

The court has previously ruled on the intersection of the ADA and the FLSA in the context of a lapse in appropriations. See Martin v. United States, 130 Fed. Cl. 578 (2017). In Martin, plaintiffs were "current or former government employees who allege[d] that they were not timely compensated for work performed during the shutdown, in violation of the [FLSA]." Id. at 580 (citing 29 U.S.C. § 201 et seq.). The plaintiffs in Martin alleged the right to liquidated damages with regard to both the government's failure to timely pay minimum wages and its failure to pay overtime wages. See id. In its motion for summary judgment, the government argued that "it should avoid liability under the FLSA for its failure to [pay plaintiffs on their regularly scheduled pay days during the shutdown] because it was barred from making such payments pursuant to the ADA." See id. at 582. The government summarized its argument in Martin as follows:

> The FLSA and the Anti-Deficiency Act appear to impose two conflicting obligations upon Federal agencies: the FLSA mandates that the agencies "shall pay to each of [its] employees" a minimum wage, 29 U.S.C. § 206(a) (emphasis added), which has been interpreted by the courts to include a requirement that the minimum wage be paid on the employees' next regularly scheduled pay day, see Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 707 n.20 [65 S. Ct. 895, 89 L. Ed. 1296] (1945); Biggs v. Wilson, 1 F.3d 1537, 1540 (9th Cir. 1993), and the [ADA] mandates that "[a]n officer or employee of the United States Government . . . may not . . . make or authorize an expenditure . . . exceeding an amount available in an appropriation or fund for the expenditure . . . ." 31 U.S.C. § 1341(A)(1)(A) (emphasis added). Thus, when Federal agencies are faced with a lapse in appropriations and

> cannot pay excepted employees on their next regularly scheduled payday, the question arises of which statutory mandate controls.

Id. at 582-83 (quoting defendant's motion for summary judgment) (alterations in original).

After reviewing applicable precedent and persuasive authority, the court concluded that "the issue is more complex than simply a choice between whether the FLSA or the ADA controls." Id. at 583. In the court's view:

> the appropriate way to reconcile the [ADA and the FLSA] is not to cancel defendant's obligation to pay its employees in accordance with the manner in which the FLSA is commonly applied. Rather, the court would require that defendant demonstrate a good faith belief, based on reasonable grounds, that its actions were appropriate. As such, the court will proceed to analyze this case under the construct of the FLSA, and evaluate the existence and operation of the ADA as part of determining whether defendant met the statutory requirements to avoid liability for liquidated damages.

Id. at 584.

The court noted that plaintiffs' claims survived a motion to dismiss because they had "alleged that defendant had failed to pay wages" on plaintiffs' "next regularly scheduled payday." Id. at 584. On summary judgment, the court concluded that plaintiffs had proven this claim. See id. The court then concluded that the evidence supported an award of liquidated damages because the government failed to satisfy the court that it acted in good faith and on reasonable grounds when it failed to make the payments required under the FLSA.[4] See id. at 585-86.

Both parties acknowledge that the plaintiffs in Martin were "situated similarly to plaintiffs here." ECF No. 23 at 13 (defendant's motion to dismiss); see also ECF No. 26 at 7 ("The [p]laintiffs here have pled precisely the same type of claim presented in Martin, i.e., that they were non-exempt employees who worked for the federal government during the shutdown and were not paid on their regular pay dates."). In addition, plaintiffs here, like the plaintiffs in Martin, have alleged that "[d]efendant conducted no analysis to determine whether its failure to pay" plaintiffs "on their

---

4 In Martin, the defendant also argued that it should avoid liability for liquidated damages with regard to overtime wages due to its inability to calculate the correct amounts due. See Martin v. United States, 130 Fed. Cl. 578, 586-87 (2017). This argument was based on a bulletin from the Department of Labor, and involves an issue that has not been raised in the present case. The absence of this argument, however, has no bearing on the application of the court's reasoning in Martin with regard to the structure of the proper analysis in this case.

regularly scheduled payday" during the shutdown "complied with the FLSA." ECF No. 1 at 8.

In its motion to dismiss, defendant does not dispute plaintiffs' allegations that they were required to work during the shutdown, or that the plaintiffs were not paid during that time due to the lapse in appropriations. See ECF No. 23. Defendant characterizes the issue now before the court as "whether plaintiffs have stated a claim for liquidated damages under the [FLSA] notwithstanding the provisions of the [ADA]." Id. at 7. In arguing its position, defendant reiterates the arguments advanced in Martin, but does not present any meaningful distinction between the posture of the Martin plaintiffs and the plaintiffs here. Instead, it acknowledges that "[t]his Court in Martin v. United States concluded that plaintiffs situated similarly to plaintiffs here could recover liquidated damages under the FLSA," but states that it "respectfully disagree[s] with that holding." Id. at 13-14.

Notwithstanding defendant's disagreement, the court continues to believe that the framework it set out in Martin is appropriate and applies here.[5] As it did in Martin, "the court will proceed to analyze this case under the construct of the FLSA, and evaluate the existence and operation of the ADA as part of determining whether defendant met the statutory requirements to avoid liability for liquidated damages."[6] Martin, 130 Fed. Cl. at

---

[5] Defendant also argues that its obligations under the FLSA are limited by the ADA because "a congressional payment instruction to an agency must be read in light of the [ADA]." ECF No. 23 at 16. In support of this argument, defendant cites to Highland Falls-Fort Montgomery Cent. Sch. Dist. v. United States, 48 F.3d 1166, 1171 (Fed. Cir. 1995). See id. at 16-17. In Highland-Falls, plaintiffs challenged the Department of Education's (DOE) method for allocating funds under the Impact Aid Act. Highland-Falls, 48 F.3d at 1171. The United States Court of Appeals for the Federal Circuit found, however, that the DOE's "approach was consistent with statutory requirements." Id. The case did not address FLSA claims, and found that the DOE's approach "harmonized the requirements of the Impact Aid Act and the [ADA]." See id. In the court's view, the Federal Circuit's decision in Highland-Falls does not alter the analysis in this case. The United States District Court for the District of Columbia's combined decision in National Treasury Employees Union v. Trump, Case No. 19-cv-50 and Hardy v. Trump, Case No. 19-cv-51, 444 F. Supp. 3d 108 (2020), discussed by defendant in one of its supplemental filings, see ECF No. 43, is likewise unhelpful. Although it involved facts that arose from the same 2018 lapse in appropriations, the decision focuses almost exclusively on an analysis of whether plaintiffs' claims were moot, rather than on the operation of the ADA.

[6] The parties both claim that the Supreme Court of the United States' decision in Maine Community Health, 140 S. Ct. 1308, supports their position in this case. See ECF No. 51, ECF No. 53. Maine Community Health does not address the FLSA, and only includes a limited discussion of the ADA. See Maine Cmty. Health, 140 S. Ct. at 1321-22. Accordingly, the decision does not dictate the outcome here. To the extent that the case informs the present discussion, however, it tends to support plaintiffs. In the opinion, the Supreme Court held that "the [ADA] confirms that Congress can create obligations without contemporaneous funding

584. The court will, of course, consider the GEFTA amendment to the ADA as part of its analysis.

C. Waiver of Sovereign Immunity

Before analyzing the sufficiency of plaintiffs' allegations, the court must address defendant's contention that plaintiffs' claims are barred by the doctrine of sovereign immunity. In its motion to dismiss, defendant correctly notes that "'[a] waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text, and will not be implied.'" ECF No. 23 at 19 (quoting Lane v. Pena, 518 U.S. 187, 192 (1996)). And that waiver "'will be strictly construed, in terms of its scope, in favor of the sovereign.'" Id. (quoting Lane, 518 U.S. at 192). Defendant concedes that the FLSA includes a waiver of sovereign immunity, but argues that the claims made by plaintiffs in this case fall outside the scope of that waiver. See id.; see also King v. United States, 112 Fed. Cl. 396, 399 (2013) (stating that "there is no question that sovereign immunity has been waived under the FLSA").

Defendant argues that the FLSA "does not require that employees be paid on their regularly scheduled pay date or make damages available when compensation is not received on a pay date." ECF No. 25 at 19. As a result, defendant contends, the scope of the FLSA's waiver of sovereign immunity does not extend to the category of claims alleging a FLSA violation because wages were not paid as scheduled, such as plaintiffs' claims in this case. See id. at 19-21. According to defendant, the GEFTA confirms its long-standing belief that the government's payment obligations under the FLSA are abrogated by a lack of appropriations:

> The [GEFTA] provides that "each excepted employee who is required to perform work during a . . . lapse in appropriations shall be paid for such work, at the employee's standard rate of pay, at the earliest date possible after the lapse in appropriations ends, regardless of scheduled pay dates." Pub. L. No. 116-1, 133 Stat. 3. Congress has thus spoken directly to the question of when compensation should be paid. There can be no basis for inferring that compensation made in accordance with that explicit directive subjects the United States to liquidated damages.

Id. at 20-21.

---

sources," and concludes that "the plain terms of the [statute at issue] created an obligation neither contingent on nor limited by the availability of appropriations or other funds." Id. at 1322, 1323. Applied here, this conclusion suggests that the defendant can incur an obligation to pay plaintiffs pursuant to the normal operation of the FLSA even when funding is not available.

Defendant also asserts that the scope of its waiver of sovereign immunity for FLSA claims does not cover the claims asserted here. See ECF No. 30 at 13. It argues, without citation to any authority, that:

> when the United States does not pay employees on their regularly scheduled paydays during a lapse in appropriations, a[] FLSA cause of action against the United States (1) does not accrue because the United States has not waived sovereign immunity for money damages resulting from the delayed payment of wages during a funding gap, and (2) cannot accrue because the [ADA] controls when and at what rate of pay the government must pay employees following a funding gap.

Id.

The court disagrees. The claims brought by plaintiffs in this case are "garden variety" minimum wage and overtime claims under the FLSA. See ECF No. 26 at 16-17; see also ECF No. 1 at 7-10. Because the FLSA does not specify when such claims arise, courts have interpreted the statute to include a requirement that employers make appropriate wage payments on the employee's next regularly scheduled payday. See Brooklyn Sav. Bank, 324 U.S. at 707; Biggs, 1 F.3d at 1540. Contrary to defendant's suggestion, the court is unpersuaded that this judicially-imposed timing requirement transforms ordinary FLSA claims into something analytically distinct, and beyond the scope of the statute's waiver of sovereign immunity.

Accordingly, the court finds that defendant has waived sovereign immunity as to plaintiffs' claims, as it has with all FLSA claims, and the court will review the sufficiency of plaintiffs' allegations as it would in any other FLSA case.

D. Plaintiffs State a Claim for FLSA Violations

As noted above, the FLSA requires that the government "pay to each of [its] employees" a minimum wage. 29 U.S.C. § 206(a). Pursuant to the FLSA, the government also must compensate employees for hours worked in excess of a forty-hour workweek "at a rate not less than one and one-half times the regular rate at which [they are] employed." 29 U.S.C. § 207(a)(1). And although the text of the statute does not specify the date on which wages must be paid, courts have held that employers are required to pay these wages on the employee's next regularly scheduled payday. See Brooklyn Sav. Bank, 324 U.S. at 707; Biggs, 1 F.3d at 1540.

In their complaint, plaintiffs allege that during the lapse in appropriations, they and all putative class members were excepted employees "were forced to continue to perform their duties designated as essential, without the receipt of their normally

scheduled wages."[7] ECF No. 1 at 3. Plaintiffs allege specific facts demonstrating how the allegations apply to each named plaintiff. See id. at 4-5.

Defendant does not contest any of these allegations, and in fact, concedes that "plaintiffs [were] employees of agencies affected by the lapse in appropriations," and that "plaintiffs were paid at the earliest possible date after the lapse in appropriations ended." ECF No. 23 at 12, 13. Defendant also admits that "[p]laintiffs are federal employees who performed excepted work during the most recent lapse in appropriations." Id. at 15. In short, defendant does not claim that plaintiffs are not entitled to payment under the FLSA, but instead argues that it "fully complied with its statutory obligations to plaintiffs." Id. at 16.

The court finds that, presuming the facts as alleged in the complaint and drawing all reasonable inferences in their favor, plaintiffs have stated a claim for relief under the FLSA. See Cary, 552 F.3d at 1376 (citing Gould, 935 F.2d at 1274).

E. Liquidated Damages

Defendant insists that its failure to pay plaintiffs was a decision made in good faith, in light of the ADA. See ECF No. 30 at 14-15. It further urges the court to find that its good faith is so clear that the recovery of liquidated damages should be barred at this stage in the litigation. See id. at 14-18. But as the court held in Martin:

> [I]t would be inappropriate to determine, on motion to dismiss, whether the government had reasonable grounds and good faith. It may well be that the government can establish these defenses, but its opportunity to do so will come later on summary judgment or at trial. Moreover, even if the court

---

[7] Defendant argues that "[t]o the extent that plaintiffs (1) claim any FLSA violation for failing to pay FLSA minimum wages or overtime wages to FLSA-exempt employees, or (2) welcome FLSA-exempt employees to join their collective, those claims must be dismissed." ECF No. 23 at 15 n.3. In support of this statement, defendant cites to Jones v. United States, 88 Fed. Cl. 789 (2009). See id. In Jones, the court stated: "The 'precise question at issue' is whether Section 111(d) of the [Aviation and Transportation Security Act] exempts [Transportation Security Administration (TSA)] from compliance with the FLSA when establishing overtime compensation for security screeners. Because we find that the plain language of Section 111(d) is unambiguous, we conclude that TSA need not comply with the FLSA." 88 Fed. Cl. at 792 (emphasis added). This case is not binding precedent, and appears to be limited in application to security screeners. Moreover, plaintiffs do not allege that any putative class member is a TSA employee. See ECF No. 1 at 10. Because the court's decision in Jones does not hold that all TSA employees are necessarily FLSA-exempt, and because neither plaintiffs nor defendant has alleged that any putative class member is a TSA employee, the court will not address this argument at this time.

> were to decide that a liquidated damages award is warranted, additional factual determinations remain to be made as to which employees, if any, are entitled to recover, and damages, if any, to which those employees would be entitled.

Martin v. United States, 117 Fed. Cl. 611, 627 (2014). Accordingly, the court declines to rule at this time on the issue of whether defendant can establish a good faith defense against liability for liquidated damages in this case.

IV. Conclusion

Accordingly, for the foregoing reasons:

(1) Defendant's motion to dismiss, ECF No. 23, is **DENIED**;

(2) On or before **February 1, 2021**, defendant is directed to **FILE** an **answer** or otherwise respond to plaintiffs' complaint; and

(3) On or before **February 1, 2021**, the parties are directed to **CONFER** and **FILE** a **joint status report** informing the court of their positions on the consolidation of this case with any other matters before the court.

IT IS SO ORDERED.

s/Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Judge